

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| IN RE THE MARRIAGE OF ANTHONY LONG, | ) ) ) ) ) ) ) ) ) ) ) |
| Appellant, | |
| v. | |
| ELIZA MACHADO LONG, | |
| Respondent. | |

WD77510

OPINION FILED: August 25, 2015

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Patrick W. Campbell, Judge

Before Division One: Cynthia L. Martin, Presiding Judge, Joseph M. Ellis, Judge and James E. Welsh, Judge

**Per curiam:**

Anthony Edward Long ("Father") appeals from the trial court's April 10, 2014 judgment finding him in contempt for failing to abide by the terms of a judgment of temporary child support, maintenance, and attorney's fees. Because Father's notice of appeal was not timely filed, his appeal is dismissed.

## Factual and Procedural History

Father filed a petition for dissolution of marriage on August 30, 2012. Eliza Machado Long ("Mother") filed an answer and counterclaim and an application for pendente lite orders regarding child support, maintenance, attorney fees, and costs.

On March 13, 2013, the trial court issued a Pendente Lite Judgment ordering Father to pay $531.00 a month in child support, retroactive to the date that the dissolution petition was filed; $400.00 a month in temporary maintenance retroactive to the filing of Mother's application for pendente lite orders; and $2,000.00 in attorney fees and $500.00 in costs.

Father appealed the Pendente Lite Judgment.[1] The appeal was later dismissed by this Court due to Father's failure to diligently prosecute the appeal.

On July 3, 2013, Mother filed a motion for contempt seeking to enforce the Pendente Lite Judgment. On April 10, 2014, the trial court entered a judgment of contempt and warrant for commitment ("Contempt Judgment") which held Father in contempt of court for willfully and intentionally failing to make payments required by the Pendente Lite Judgment and which found that Father had the present ability to make the required payments. The Contempt Judgment remanded Father to the custody of the Jackson County Department of Corrections for commitment to the Jackson County Jail, where he was to remain until he purged himself of the contempt by paying $12,044.00 or

---

[1]Pendente lite judgments issued pursuant to section 452.315 are final judgments. *In re Marriage of Deatherage,* 595 S.W.2d 36, 37-8 (Mo. App. S.D. 1980); *Richardson v. Richardson*, 524 S.W.2d 149, 153 (Mo. App. E.D. 1975). They must be appealed within the time frames collectively described in Rules 75.01, 81.05(a)(1), and 81.04(a). *See Carlisle v. Carlisle*, 285 S.W.3d 343, 344 (Mo. App. E.D. 2009). "Failure to appeal from pendente lite orders confers finality upon them." *State ex rel. Carlson v. Aubuchon*, 669 S.W.2d 294, 296 (Mo. App. E.D. 1984).

2

was released according to law. Father was actually remanded into custody on April 10, 2014.

Father filed a notice of appeal from the Contempt Judgment on April 30, 2014.

## Analysis/Timeliness of Father's Appeal

Father raises three points on appeal. Father claims it was error to hold him in contempt because: (i) the Pendente Lite Judgment was void as a matter of law;[2] (ii) the Contempt Judgment failed to set forth facts and circumstances constituting the contempt; and (iii) the Contempt Judgment failed to set forth findings that Father had the present ability to purge himself of the contempt.

Before we address the merits of Father's points on appeal, we must first determine whether we have jurisdiction to do so. "This court has a duty to determine *sua sponte* whether we have jurisdiction to review an appeal." *Rocking H Trucking, LLC v. H.B.I.C., LLC*, 427 S.W.3d 891, 895 (Mo. App. W.D. 2014). "'Timely filing of a notice of appeal is jurisdictional.'" *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 471 (Mo. banc 2011) (quoting *Berger v. Cameron Mut. Ins. Co.*, 173 S.W.3d 639, 640 (Mo. banc 2005)). "'If a notice of appeal is untimely, the appellate court is without jurisdiction and must dismiss the appeal.'" *Id.* at 471-72 (quoting *Popular Leasing USA, Inc. v. Universal Art Corp. of New York*, 57 S.W.3d 875, 877 (Mo. App. E.D. 2001)).

_____

[2]Because we otherwise conclude that Father's appeal must be dismissed because it is untimely, we need not address Mother's argument that Father is barred from collaterally attacking the Pendente Lite Judgment. *See* footnote number 1. Moreover, we need not address whether Father's argument has been rendered moot by the trial court's subsequent entry of a final judgment and decree of dissolution of marriage which independently orders Father to pay Mother the sum of $19,485 pursuant to the Pendente Lite Judgment. Father appealed the final judgment and decree (WD 77697), secured an order consolidating the appeal in WD 77697 with this appeal, and then voluntarily dismissed the appeal in WD 77697, rendering the judgment and decree of dissolution of marriage final and nonappealable.

"No . . . appeal will be effective unless the notice of appeal shall be filed not later than ten days after the judgment or order becomes final." Section 512.050;[3] Rule 81.04(a).[4] Father filed his notice of appeal from the April 10, 2014 Contempt Judgment on April 30, 2014. Mother argues that Father's notice of appeal is untimely because it was filed more than ten days after the Contempt Judgment became final upon Father's actual incarceration on April 10, 2014. Father argues that his notice of appeal is timely because the Contempt Judgment was a Rule 74.01(a) judgment, and is subject to Rules 75.01 and 81.05(a)(1), which combine to provide that a trial court retains control over its judgments for thirty days and that for purposes of calculating the time within which an appeal must be taken, a judgment becomes final at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed. To determine whether Father's notice of appeal was timely filed, we must determine when a contempt judgment becomes "final" as to commence the ten-day timeframe for filing a notice of appeal described in Rule 81.04(a).

"'The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists.'" *Buemi v. Kerckhoff*, 359 S.W.3d 16, (Mo. banc 2011) (quoting *State ex rel. Coca-Cola Co v. Nixon*, 249 S.W.3d 855, 859 (Mo. banc 2008) (internal citations omitted)). With rare exceptions not applicable to this case,[5] section 512.020 addresses the right of appeal in civil actions. That statute provides:

---

[3]All statutory citations are to RSMo 2000 as supplemented unless otherwise noted.
[4]All Rule references are to *Missouri Court Rules*, Volume I--State (2015) unless otherwise noted.
[5]*See, e.g.*, section 211.261 (addressing the right to appeal certain judgments, orders, or decrees pursuant to Chapter 211); section 435.440 (addressing the right to appeal the denial of a motion to compel arbitration).

4

Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:

(1) Order granting a new trial;

(2) Order refusing to revoke, modify, or change an interlocutory order appointing a receiver or receivers, or dissolving an injunction;

(3) Order granting or denying class action certification . . . .

(4) Interlocutory judgments in actions of partition which determine the rights of parties; or

(5) Final judgment in the case or from any special order after final judgment in the cause; but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action or the trial court reviewed on an appeal from the final judgment in the case.

Section 512.020 thus creates three categories of appealable orders or judgments: (i) the interlocutory orders enumerated in subsections (1) through (4); (ii) final judgments; and (iii) special orders entered after final judgment.

Plainly, contempt judgments are not expressly enumerated as "appealable" in section 512.020. However, the right to appeal a civil contempt judgment[6] as a "final judgment" pursuant to section 806, Rev. St. 1899,[7] the precursor to section 512.020, was

---

[6]"Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered. Its purpose is to coerce compliance with the relief granted." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994). Civil contempt judgments stand in contrast to citations or convictions for criminal contempt authorized as a part of a court's inherent constitutional power and by section 476.110 to punish a person's refusal to abide by a court's authority as to protect the dignity of the judicial system. *See Smith v. Pace,* 313 S.W.3d 124, 129-30 (Mo. banc 2010); *Teefey v. Teefey*, 533 S.W.2d 563, 565 (Mo. banc 1976). A criminal contemnor has no right of appeal and must seek habeas relief. *Smith*, 313 S.W.3d at 129. It is uncontested that the Contempt Judgment is a civil contempt judgment. It sought to coerce Father to comply with the Pendente Lite Judgment for the benefit of Mother.

[7]Section 806, Rev. St. 1899 provided, in pertinent part, that: "Any party to a suit aggrieved by any judgment of any circuit court in any civil cause from which an appeal is not prohibited by the Constitution, may take

5

carefully discussed and clearly recognized in *State ex rel. Chicago, B. & Q.R. Co. v. Bland*, 88 S.W. 28 (Mo. banc 1905) (rejecting a writ of prohibition as an appropriate means to challenge a civil contempt judgment because appellate relief is available).  *See also Threlkel v. Miles*, 10 S.W.2d 953, 956 (Mo. banc 1928) (holding that irregularities alleged in connection with the issuance of a civil contempt citation were "matters of error properly cognizable on appeal" that could not be considered in a habeas action).  Though it recognized the statutory right to appeal a civil contempt judgment as a "final judgment," the Supreme Court in *State ex rel. Chicago, B. & Q.R. Co.* did not address **when** a civil contempt judgment becomes a "final judgment."

That topic has been the subject of frequent discussion in our appellate decisions and was ultimately addressed by the Missouri Supreme Court in *In re Marriage of Crow and Gilmore*, 103 S.W.3d 778 (Mo. banc 2003).  A civil contempt order or judgment is interlocutory when it is entered.  *Id.* at 781.  Though Father challenges the origin of this accepted principle, the interlocutory character of civil contempt judgments is consistent with their coercive nature.  Civil contempt judgments afford a civil contemnor the opportunity to purge the contempt in order to avoid stated enforcement consequences.  If a contemnor purges the contempt, the matter becomes moot and unappealable.[8]  *Id.* at 780 (Mo. banc 2003) (citations omitted).  "Orders or judgments which leave some further

<hr />

his appeal to the court having appellate jurisdiction, from . . . any final judgment in the case."  *See State ex rel. Chicago, B. & Q.R. Co. v. Bland*, 88 S.W. 28, 31 (Mo. banc 1905).

[8]In this respect, the nature of a civil contempt judgment is very similar to a Rule 90.10(b) judgment which resolves exceptions to a garnishment *and* orders a garnishee to pay in or deliver garnished funds or property.  Rule 90.10(b) judgments which order a pay in or delivery of garnished property are not final judgments but are instead interlocutory, as they afford the garnishee the opportunity to comply, an act which would then render the judgment moot and unappealable.  *See S.A. v. Jodoin*, 861 S.W.2d 810, 813-14 (Mo. App. W.D. 1993); *Division of Employment Sec., State of Mo. v. Cusumano*, 785 S.W.2d 310, 312 (Mo. App. E.D. 1990); *Joy v. Safeway Stores, Inc.*, 755 S.W.2d 13, 14 (Mo. App. W.D. 1988).

6

question or direction for future determination are interlocutory and not final and appealable." *S.A. v. Jodoin*, 861 S.W.2d 810, 813-14 (Mo. App. W.D. 1993) (citing *Joy v. Safeway Stores, Inc.*, 755 S.W.2d 13, 14 (Mo. App. W.D. 1988)). On the other hand, if a civil contemnor refuses to purge the contempt, the contemnor may appeal the civil contempt judgment, though not until the interlocutory judgment becomes final. *In re Marriage of Crow*, 103 S.W.3d at 781 (citations omitted). A civil contempt judgment does not become final until it is ***enforced*** either through the imposition of fines or imprisonment. *Id.* When the enforcement mechanism imposed is imprisonment, a contempt order is "'enforced' when there is 'actual incarceration pursuant to a warrant [or order] of commitment.'" *Id.* (quoting *In re Marriage of Beaver*, 954 S.W.2d 717, 721 (Mo. App. S.D. 1997)).[9] Once enforcement of an interlocutory civil contempt judgment occurs, "the contempt order changes from mere threat to 'enforcement,' and becomes final and appealable." *Id.* at 782 (citing Rule 81.04(a); section 512.050).

Applying these settled principles here, the Contempt Judgment was interlocutory when it was entered. We thus reject Father's contention that the Contempt Judgment was, upon its entry, a Rule 74.01(a) judgment subject to Rule 75.01 and Rule 81.05(a)(1). Rule 74.01(a) defines "judgment" as "a decree and any order from which an appeal lies." Barring statutory exception, no appeal lies from an interlocutory order or decree. Thus, Rule 74.01(a) is not implicated, and Rule 75.01 is not triggered, by interlocutory orders or judgments. *Spicer*, 336 S.W.3d at 469 ("Where the 'judgment' in question is not final,

---

[9]When the mechanism for enforcement is the imposition of a fine, enforcement of a civil contempt judgment occurs "when the moving party executes on the fine." *In re Marriage of Crow*, 103 S.W.3d at 781 (citations omitted).

7

Rule 75.01 does not apply.") (quoting *Williams v. Williams*, 41 S.W.3d 877, 878 (Mo. banc 2001)).

Though interlocutory when entered, the Contempt Judgment became "final and appealable" upon the occurrence of a subsequent event--*enforcement* by Father's actual incarceration pursuant to a warrant of confinement. *In re Marriage of Crow*, 103 S.W.3d at 782 (citing section 512.050 and Rule 81.04(a)). Father alternatively argues, without citation to authority, that the interlocutory Contempt Judgment became a Rule 74.01(a) judgment subject to Rules 75.01 and 81.05(a)(1) at the point it was converted into a final and appealable judgment by enforcement. This argument is inconsistent with the plain language of Rule 74.01(a) which, in defining "judgments" as decrees or orders "from which an appeal lies," states that "[a] judgment is *rendered when entered*." (Emphasis added.) In other words, unless an appeal lies from a decree or order *when it is entered*, the decree or order is not a "judgment" as defined in Rule 74.01(a), and is not a "judgment" as to which Rules 75.01 and 81.05(a)(1) apply.

The Missouri Supreme Court effectively concluded as much when it held that a contempt order becomes "final and appealable" upon enforcement. *In re Marriage of Crow*, 103 S.W.3d at 782. Significantly, this holding was followed by citation to Rule 84.01(a) and section 512.050, both of which require the filing of a notice of appeal within ten days of a final judgment. *Id.* Adding further emphasis to the point, the Supreme Court later ruled that "[a] civil contempt order is appealable *once it becomes final*." *Carothers v. Carothers*, 337 S.W.3d 21, 24 (Mo. banc 2011) (citing *In re Marriage of Crow*, 103 S.W.3d at 780) (emphasis added). In *Carothers*, the Supreme Court observed

8

that "Rule 81.04(a) requires a notice of appeal to be filed no more than 10 days after a judgment becomes final," then applied this observation to hold that a contemnor's notice of appeal filed seven days after enforcement by actual incarceration was timely. 337 S.W.3d at 25. Plainly, the Supreme Court in *Carothers* did not view interlocutory civil contempt judgments made final and appealable by subsequent enforcement to be Rule 74.01(a) "judgments" subject to Rules 75.01 and 81.05(a)(1), but instead viewed interlocutory civil contempt judgments as immediately subject to Rule 81.04(a)'s ten-day time frame for filing a notice of appeal once subsequent enforcement renders the judgment final and appealable.

Consistent with *In re Marriage of Crow* and *Carothers*, in *Relaxation, Inc. v. RIS, Inc.* 452 S.W.3d 743, 751 (Mo. App. W.D. 2015), we dismissed an appeal from a contempt judgment because the contemnor's notice of appeal was filed more than ten days after the contempt judgment was enforced.[10] Here, Father's notice of appeal was filed on April 30, 2014, more than ten days after the Contempt Judgment was enforced, and thus more than ten days after the Contempt Judgment became final and appealable. Father's appeal is not timely, and must be dismissed.[11]

Father acknowledges the holding in *In re Marriage of Crow* but argues the case was wrongly decided. The decisions of the Missouri Supreme Court are "controlling in

[10]The contempt order in *Relaxation, Inc.* was entered to coerce compliance with temporary and preliminary injunctions and other interlocutory orders, and not from orders or judgments that were themselves appealable. 452 S.W.3d at 745-748. We thus recognized in *Relaxation, Inc.* that section 512.020(5) might permit later appeal of the contempt judgment after final judgment in the case, though we did not resolve the question. *Id.* at 752, n. 18 (observing that section 512.020(5) expressly provides that "a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case").

[11]Father did not file a motion seeking an order permitting the late filing of a notice of appeal pursuant to Rule 81.07(a), and his time to do so has expired.

9

all other courts." Mo. Const. art. 5, section 2. "[W]e are constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court, and inquiries questioning the correctness of such a decision are improper." *John Doe B.P. v. Catholic Diocese of Kansas City-St. Joseph*, 432 S.W.3d 213, 219 (Mo. App. W.D. 2014) (citation omitted).

## Conclusion

Father's appeal is dismissed as untimely.